No. 22804.

CRIST SILVA, ALSO KNOWN AS CHRIS SILVA AND CRIST DONALD SILVA *v.* THE PEOPLE OF THE STATE OF COLORADO.
(459 P.2d 285)

Decided October 6, 1969.

LINCOLN D. COIT, JOHN A. PURVIS, L. THOMAS WOODFORD, DANIEL J. SEARS, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE McWILLIAMS.

BY direct information one Crist Silva was charged with the burglary of the Royal Flush Lounge, situate

on the outskirts of Grand Junction. In the same information, but in separate counts, Silva was also charged under the Habitual Criminal Act (C.R.S. 1963, 39-13-1 through 3) with having previously suffered three felony convictions. Trial by jury culminated in a verdict finding Silva guilty of burglary and in a subsequent proceeding before the same jury verdicts were returned finding that Silva had suffered the three previous felony convictions. Pursuant to the provisions of our Habitual Criminal Act, Silva was then sentenced to a life term in the state penitentiary. By the present writ of error Silva now seeks reversal of the judgment and sentence thus imposed upon him.

Silva initially contends that the evidence was legally insufficient to sustain his conviction for burglary, and in so doing he takes particular aim at certain fingerprint evidence introduced by the People upon the trial of this matter. His position in this regard is that under the circumstances of the case the fingerprint evidence was really of very little probative value. Our examination of the record convinces us, however, that there is sufficient evidence to support Silva's conviction for burglary, even assuming for the sake of argument that the fingerprint evidence was the only incriminating evidence introduced against him. To demonstrate that such is the case, brief reference will now be made to the evidence adduced upon trial.

The Royal Flush Lounge was forcibly entered by some person or persons in the early morning hours, entry having been gained by breaking a window. A merchant policeman making his rounds discovered the burglary and reported the incident to the local sheriff's office. It was an Officer Williams who responded to the call of the merchant police.

Upon trial Williams testified generally as to just what he found at the scene upon his arrival. For some specifics, the officer testified that he noted lying on the floor of the lounge an empty coin box which obviously had been

forcibly pried from a nearby cigarette machine. The officer who claimed considerable experience in the art of "lifting" fingerprints then went on to relate how he lifted two good prints from the aforementioned coin box. Upon trial an admitted expert in fingerprint comparison testified that the prints thus lifted from the coin box were Silva's prints, basing his conclusion upon the comparison of the lifted prints with certain known prints of Silva.

Also, there was testimony that this cigarette machine took pennies, nickels, dimes and quarters. Silva was arrested a few hours after the discovery of the burglary and when arrested he had on his person $8.58 in pennies, nickels, dimes and quarters.

And this was about the extent of the incriminating evidence offered by the People. Silva determined to exercise one of his constitutional rights and elected not to testify in his own behalf. However, by other witnesses, mainly relatives, he attempted to establish an alibi. Also, in an effort to explain his possession of pennies, nickels, dimes and quarters, there was testimony that Silva had been a big winner in a penny ante poker game two nights before the burglary.

In an effort to explain the presence of Silva's prints on the coin box, it is suggested in Silva's brief that possibly Silva touched the coin box when, after his arrest, he was being transported in the sheriff's car to the county jail. This obviously is a bit of wishful thinking, as there is absolutely nothing in the record to support any such theorization. Not only is there no evidence that Silva and the coin box were ever in the sheriff's car at the same time, but even if there had been such evidence, such would not have in any wise contradicted Williams' corroborated testimony that he took the prints from the coin box when he first discovered it lying on the floor in the Royal Flush Lounge. Furthermore, it was only on the basis of a comparison which Officer Williams himself made of the lifted prints and certain prints that were

then on file in the sheriff's office that he first determined to obtain a warrant for Silva's arrest and thereafter proceeded to arrest him. In other words, all the evidence was to the effect that Williams lifted the prints long *before* he arrested Silva.

All of this analysis is simply intended to demonstrate then that, contrary to the assertion of counsel, this is not a situation governed by the rule that if circumstantial evidence be as consistent with an hypothesis of innocence as it is with an hypothesis of guilt, then a defendant shall be acquitted. Rather, it was purely and simply a jury question as to whether the evidence of Silva's prints on the empty coin box, coupled with certain other incriminating facts and circumstances, was sufficient to tie Silva into this burglary and convince the jury beyond a reasonable doubt of his guilt. On this issue the jury has now spoken, and we hold that there is sufficient evidence to legally support its resolution of the matter.

■ For a discussion as to the weight to be accorded fingerprint testimony and a collation of cases concerned with the sufficiency of this type of evidence, see Annot., 28 A.L.R. 2d 1149-1157. The evidence in the instant case fully measures up to the general rule that in order to warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the p'ace where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed. In this regard it should be mentioned that the person who serviced the cigarette machine testified upon trial and explained the manner in which the machine here in question functioned. And, among other things, this witness testified that no "stranger or outsider" could gain access to the coin box without a key. Suffice it to say, then, the evidence in the instant case, though circumstantial in nature, is sufficient to sustain the burglary conviction.

■ Silva's remaining assignment of error relates to People's exhibit M, which was offered and received into

evidence in connection with the habitual criminal phase of this case. Exhibit M purported to be a duly authenticated copy of a prior felony conviction suffered by Silva in Chaffee County in 1960. The exhibit was an "authenticated" copy of the prior conviction, as opposed to a mere "certified" copy, as is required by C.R.S. 1963, 39-13-2. See also in this regard, *Coppinger v. People,* 152 Colo. 9, 380 P.2d 19 and *Brown v. People,* 124 Colo. 412, 238 P.2d 847.

The particular objection to this exhibit was based on the fact that the certificate of attestation referred to *foregoing* papers and documents, whereas the judgment and sentence and mittimus were actually attached *following* — and not before — the certificate of attestation. In other words, the authentication should have been the last page to exhibit M, whereas when exhibit M was assembled it was made the first page of the exhibit. Under the circumstances we perceive no error, however, in the trial court's admitting into evidence People's exhibit M.

First, it should be noted that though the so-called certificate of attestation referred to *foregoing* pages, when there were none, the certificate also referred to the Judgment and Sentence by date, and also made reference to a Supplemental Order, also by specific date. Under such circumstances, particularly when the entire authenticated copy of the Chaffee County conviction consisted of only three pages, including the certificate of attestation, it is a bit hard to fathom just how any technical error in this regard could have misled or prejudiced Silva.

Furthermore, upon trial both the clerk and the sheriff of Chaffee County testified on behalf of the People. Each identified exhibit M, and more importantly, both identified Silva and stated that they were personally present in the courtroom in Chaffee County when Silva was sentenced to a term of one to two years in the penitentiary for the crime of assault with a deadly weapon.

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.