232 P.3d 1287

Rosten Lee CLARK, Petitionerv.The PEOPLE of the State of Colorado, Respondent.

No. 09SC358.
Supreme Court of Colorado,
En Banc.
June 7, 2010.
Rehearing Denied June 28, 2010.
Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.
John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.
Justice HOBBS delivered the Opinion of the Court. We granted certiorari in
People v. Clark, 214 P.3d 531 (Colo.App.2009), to determine whether sufficient evidence exists to sustain defendant's sexual assault conviction.1 Defendant Rosten Lee Clark argues that the prosecution failed to prove beyond a reasonable doubt his identity as the perpetrator of the sexual assault. He contended before the jury, in the court of appeals, and now before us that the prosecution's proof, which included DNA evidence of his semen on the alleged victim's clothing, failed to exclude the possibility that the semen was deposited at a time other than that of the crime. This is a test for sufficiency of the evidence that we employed in the fingerprint identification cases of
People v. Ray, 626 P.2d 167 (Colo.1981), and
Silva v. People, 170 Colo. 152, 459 P.2d 285 (1969). Though it upheld Clark's conviction, the court of appeals employed the
Ray and
Silva test for sufficiency of the evidence, modifying it for application to DNA cases. We determine that the proper analysis for sufficiency of the evidence in this case is the one we employed in
People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973), and therefore disapprove of the court of appeals' rationale. In accordance with our
Bennett test, we hold that the direct and circumstantial evidence in this case, when viewed in the light most favorable to the prosecution, is substantial and sufficient
 to support the jury's finding beyond a reasonable doubt that Clark sexually assaulted the victim, G.O. Accordingly, we uphold the judgment of the court of appeals affirming Clark's conviction, but on different grounds.
I. At approximately 6:30 a.m. on January 10, 2004, an intruder entered the home of G.O. and sexually assaulted her in her bedroom. At the time of the attack, G.O. lived with her mother and her four-year-old son. G.O.'s mother was not home at the time of the assault, but G.O.'s son witnessed the incident. Due to a developmental disability that prevents him from speaking, G.O.'s son is unable to convey what he observed. G.O. saw her attacker for less than five seconds before being forced to the ground on her stomach. G.O. initially described her assailant as approximately one foot taller than she is (she stands five feet four inches tall), with a slim to medium build, and wearing a Carhartt-type jacket with a hood obscuring his face. G.O. was unable to provide a better description of her attacker because it was dark outside and because he covered her head with a green fleece jacket during the assault. G.O. believed the perpetrator attempted to disguise his voice by speaking gruffly. After the sexual assault, G.O.'s attacker instructed her to count to one thousand before calling police or leaving her bedroom. G.O.'s medical examination after the assault revealed no physical trace evidence, but investigating officers collected over twenty items of clothing from her bedroom that were sent to the Colorado Bureau of Investigation (“CBI”) for analysis. Two of those items tested positive for the presence of semen-a black headband and the green fleece jacket used to cover G.O.'s head during the assault. CBI analysts constructed a DNA profile from the semen samples, checked it through the Combined DNA Index System, and matched it to Clark's profile, within a reasonable degree of scientific certainty. The prosecution subsequently charged Clark with one count of sexual assault, in violation of section 18-3-402(1)(a), C.R.S. (2005); one count of first degree burglary, in violation of section 18-4-202, C.R.S. (2005); and one count of second degree burglary, in violation of section 18-4-203, C.R.S. (2005). At trial, the prosecution offered physical evidence linking Clark to the location of the assault: namely, the semen found in G.O.'s bedroom on the green fleece jacket and the black headband. G.O. testified that she had purchased the green fleece jacket from a thrift store only two days prior to the assault. The thrift store owner attested that he likely washed the green fleece jacket before offering it for sale to the public.2 G.O. testified that the black headband was not hers.3 The CBI analyst who tested the semen samples testified that the semen found on the green fleece jacket and the black headband matched Clark's DNA to a reasonable degree of scientific certainty. The analyst indicated that a reasonable degree of scientific certainty meant that the chances of the DNA belonging to another person were greater than one in one thousand times the United States population, or one thousand times three hundred million. The prosecution offered testimony from a police investigator who interviewed Clark before charges were filed. After receiving the DNA results, the police investigator spoke with Clark about his relationship with G.O.'s mother. Clark stated that he met G.O.'s mother while working with her boyfriend. Clark did some work for G.O.'s mother in early 2003, moving items out of storage and around her house. In the taped interview, 
 Clark denied engaging in any sexual conduct with G.O.'s mother, but indicated that he could not remember if he had ever masturbated in the house. G.O. testified that she also knew Clark because of the work he had done for her mother. G.O. stated that Clark's common-law wife had babysat G.O.'s son on multiple occasions and both Clark and his common-law wife were aware of G.O.'s son's developmental disability. The prosecution's case also contained circumstantial evidence corroborating the identity of the perpetrator as Clark. G.O. described her attacker as (1) about a foot taller than she was, or around six feet four inches-Clark is six feet five inches tall; (2) with a slim to medium build-Clark is 225 pounds and, given his height, he could likely be described as having a slim to medium build; (3) wearing a Carhartt-type jacket-Clark admitted owning a Carhartt jacket; and (4) in his thirties-Clark was thirty-one at the time of the assault. G.O. testified that her house was hard to find, but because Clark had previously worked for G.O.'s mother, the prosecution argued that the jury could infer that Clark could easily find the house. G.O. also believed that her attacker was familiar with her son's disability because the attacker did not acknowledge the son's presence or outcries during the assault. The prosecution alleged that a reasonable inference from this evidence was that the assailant knew of G.O.'s son's inability to communicate and was unconcerned if G.O.'s son witnessed the attack. Clark's defense was aimed at creating reasonable doubt as to the identity of G.O.'s attacker. He presented three distinct lines of evidence to support his theory of defense: evidence of a similar, unsolved offense; testimony of a police officer trained in tracking who analyzed footprints found outside G.O.'s home; and eyewitness testimony. First, Clark presented evidence that another, unsolved sexual assault had occurred nearby under similar circumstances. Just over a month before G.O.'s attack, J.D. was sexually assaulted. J.D.'s attacker wore a ski mask which obscured much of his face. He forced J.D. onto her stomach and covered her head with a pillow, but she was able to see his arms and stomach and she observed that he did not have any tattoos or identifying marks. After the assault, J.D.'s attacker told her to count to one thousand before she called police or left her bedroom. Clark presented this evidence to demonstrate the possibility that the same person committed both assaults. During trial, Clark exposed his arms and stomach, substantiating the defense theory that he was not J.D.'s attacker because he has tattoos predating both attacks on his arms and a large, noticeable scar on his stomach from a surgery he underwent as an infant. Second, a police officer, offered as an expert in tracking, testified regarding two sets of footprints found behind G.O.'s house which led to another house located on the same tract of land. The officer indicated that one set was likely left close in time to G.O.'s assault because the footprints had not iced over and were clear of the light snow that had fallen earlier that morning. There was a distinct heel mark in the footprints that matched boots taken from G.O.'s neighbor's house. Countering this potentially incriminating evidence, the prosecution's evidence revealed that G.O.'s neighbor did not own a Carhartt jacket, his physical appearance did not match that given by G.O., and his DNA did not match the profile created by the CBI analyst. Third, Clark presented testimony from a newspaper carrier whose route took her by G.O.'s house. While on her route less than half an hour after the assault occurred, the newspaper carrier noticed a person walking in the foggy morning who gave her chills. The newspaper carrier testified that the individual was male and wore a dark jacket with a hood, somewhat consistent with G.O.'s description. However, the newspaper carrier described the individual as “around five foot eight or nine, [with] a smaller frame.” The newspaper carrier believed that the individual was attempting to conceal his identity and said that he looked suspicious, leading to an inference that he may have been guilty of something. This testimony suggested that the suspicious man may have been responsible for G.O.'s assault. However, the prosecution's
 evidence demonstrated that Clark's height, six feet five inches, and build did not match the suspicious man's physical attributes. Clark also testified in his own defense to offer an innocent explanation for the presence of his semen inside G.O.'s bedroom. Clark indicated that he had engaged in consensual sexual relations with G.O.'s mother on three different occasions spanning late December 2003 to early January 2004. He claimed that the third incident, during which G.O.'s mother performed oral sex on him, occurred in G.O.'s bedroom just days before G.O.'s assault. This sexual encounter, Clark claimed, explained how his semen was found on both the green fleece jacket and the black headband. G.O. testified that she had purchased the green fleece jacket two days prior to the assault; the same two-day time frame that coincided with Clark's contentions that he had engaged in consensual sexual relations with her mother days before the assault. G.O.'s mother testified, denying any sexual contact had ever occurred between herself and Clark. The prosecution argued that G.O.'s mother's testimony accords with Clark's first account given to police before charges were filed, wherein Clark stated that he had not engaged in sexual relations with G.O.'s mother. The jury found Clark guilty of all charges. The trial court determined that the two burglary counts merged into the sexual assault count and sentenced Clark to an indeterminate term of thirty-two years to life. Clark appealed, alleging that the evidence identifying him as the perpetrator, specifically the semen samples matching his DNA profile, was insufficient to prove beyond a reasonable doubt that he committed the offenses and to sustain his conviction. The court of appeals upheld Clark's conviction but remanded the case to the trial court for resentencing. Though it upheld Clark's conviction, the court of appeals employed the
Ray and
Silva test for sufficiency of the evidence, modifying it for application to DNA cases. We determine that the proper analysis for sufficiency of the evidence in this case is the one we employed in
Bennett and therefore disapprove of the court of appeals' rationale.
II. In accordance with our
Bennett test, we hold that the direct and circumstantial evidence in this case, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support the jury's finding beyond a reasonable doubt that Clark sexually assaulted the victim, G.O.
A. Standard of Review We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction.
Dempsey v. People, 117 P.3d 800, 807 (Colo.2005). At trial, the prosecution has the burden of establishing a prima facie case of guilt through introduction of sufficient evidence.
Bennett, 183 Colo. at 130, 515 P.2d at 469. We employ a substantial evidence test to determine if the evidence presented to the jury is sufficient to sustain a defendant's conviction. Our substantial evidence test considers “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.”
Id. at 130, 515 P.2d at 469;
see also 
id. at 131, 515 P.2d at 469 (explaining that the test “affords the same status to both direct and circumstantial evidence”).
 The pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It does not matter that, were we the trier of fact, we might have reached a different conclusion.
Id. at 318-19, 99 S.Ct. 2781;
see also People v. Gonzales, 666 P.2d 123, 128 (Colo.1983) (“[T]he trial court may not serve as a thirteenth juror and determine what 
 specific weight should be accorded to ... the evidence....”). In applying the substantial evidence test, we must give the prosecution the benefit of every reasonable inference which may be fairly drawn from the evidence.
Gonzales, 666 P.2d at 128. Nevertheless, there must be a logical and convincing connection between the facts established and the conclusion inferred.
Id. (internal citation omitted). If the evidence is such that reasonable jurors must necessarily have a reasonable doubt, then the evidence is insufficient to sustain the defendant's conviction.
Bennett, 183 Colo. at 132, 515 P.2d at 470. Reasonable doubt is “a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence.... It is ... not a vague, speculative or imaginary doubt....” CJI-Crim. 3:04. In adopting the substantial evidence test, we declared that the old rule requiring the prosecution to “exclude every reasonable hypotheses other than that of guilt” was confusing and outmoded.
Bennett, 183 Colo. at 131, 515 P.2d at 469. The elimination of this rule does not improperly shift the burden to the defendant to prove his innocence, but, once the prosecution has established its case, “the defendant remains quiet at his peril.”
Holland v. United States, 348 U.S. 121, 138-39, 75 S.Ct. 127, 99 L.Ed. 150 (1954).
B. Application to this Case Clark argues that it was the prosecution's burden to present evidence that would reasonably exclude an alternative explanation for the presence of his semen or refute the other evidence presented at trial addressing the possibility that the perpetrator was another person. To the contrary, the prosecution need not offer proof exonerating other possible suspects or disproving the defendant's theory in order for the evidence to be sufficient under the substantial evidence test.
See 
Bennett, 183 Colo. at 131, 515 P.2d at 469 (stating that the prosecution need not “exclude every reasonable hypotheses other than that of guilt”). Clark argues that the jury speculated when finding him guilty because the presented evidence did not indicate when or how the semen was deposited on the green fleece jacket or the black headband found in G.O.'s bedroom. In essence, Clark alleges that, because the DNA expert was unable to give some time frame for when the semen could have been deposited, this uncertainty should rise to a reasonable doubt. In making this argument, Clark invokes the test we used for fingerprint identification cases. We formulated the fingerprint identification test to determine the sufficiency of the evidence when the prosecution presents evidence of only a single fingerprint to tie the defendant to the crime.
See generally 
Silva, 170 Colo. 152, 459 P.2d 285. In
Silva, we stated that for a single fingerprint to constitute sufficient evidence to sustain a conviction, “the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed.”
Id. at 156, 459 P.2d at 287. There, we determined that the presented evidence of defendant's fingerprints on an empty coin box forcibly pried from a cigarette machine located inside a burglarized building was sufficient to sustain his conviction for burglary.
Id. at 154-56, 459 P.2d at 286-87. We also applied the
Silva test in
Ray, 626 P.2d 167. In
Ray, we determined that the defendant's fingerprint on the outside of a milk chute-an innocent location in a public area-without further corroborating evidence, was insufficient to sustain his burglary conviction.
Id. at 168-71. The court of appeals, in deciding the case before us, employed the rationale of
Silva and
Ray.
Guided by the
Ray standard, we conclude that where, as here, the only direct evidence connecting an accused person to the crime is the presence of DNA at the scene of the crime, the evidence, to be legally sufficient to sustain a conviction, must be coupled with evidence of other circumstances tending to reasonably exclude the 
 hypothesis that the DNA was deposited at a time other than that of the crime.
Clark, 214 P.3d at 537. The court of appeals detailed sample circumstances such as “the source material of the DNA and its susceptibility to transfer, the location of the DNA, the character of the place or premises where it was found, the accessibility of that place or premises to the general public, and the object upon which the DNA was found.”
Id. at 537-38. We disagree with the court of appeals and Clark that our fingerprint identification test defines what constitutes sufficient and substantial evidence in a case such as this one. Additionally, the facts cited by the court of appeals as “circumstances” needed to corroborate the direct DNA evidence are within the province of the jury to consider as it weighs both the direct and the circumstantial evidence in the case.
See 
People v. Aalbu, 696 P.2d 796, 811 (Colo.1985) (jury's function is to determine weight of evidence). These facts are properly explored through cross-examination or direct witness testimony at trial and left to the jury's assessment. We do not speculate on the merits of the evidence or usurp the jury's conclusions.
See id.; see also 
Mata-Medina v. People, 71 P.3d 973, 983 (Colo.2003) (“jury verdicts deserve deference and a presumption of validity”). Accordingly, we disagree with and disapprove of the court of appeals' rationale. The test for sufficiency of the evidence we employed in
Bennett is applicable to this case. At trial, Clark raised minor inconsistencies between G.O.'s initial statements and her testimony. During G.O.'s 911 call, she indicated that her attacker was likely one foot taller than she was (or approximately six feet four inches), but when asked by the operator to specify a height, G.O. stated her attacker was about six feet to six feet two inches tall. Her trial testimony was consistent with the approximation that her attacker was between six feet and six feet two inches tall. Initially G.O. indicated that she had washed the green fleece jacket after buying it; however, on cross-examination she admitted it was possible she had not. In the jury system, the jurors resolve inconsistencies. Jurors must rely on the evidence presented at trial and their own common sense to determine the question of guilt.
See 
Leitensdorfer v. King, 7 Colo. 436, 440, 4 P. 37, 39 (1884) (stating that the jury weighs “all the evidence, including the opinions of experts, [the jury's] own knowledge and common sense, and determine [s] the question accordingly”);
see also 
Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (stating that the essential feature of a jury “lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen”). Thus, the jury decides difficult questions about the weight it determines to give conflicting evidence.
Aalbu, 696 P.2d at 811;
see also 
People v. Sprouse, 983 P.2d 771, 778 (Colo.1999) (sole province of jury to determine credibility of witnesses). We do not sit as a thirteenth juror to determine the weight of the evidence presented to the jury.
Gonzales, 666 P.2d at 128. The jury received testimony supporting two different scenarios regarding how and when Clark's semen was deposited on the black headband and the green fleece jacket. Because the origin of the black headband was unknown, both parties focused on the semen deposited on the green fleece jacket. The semen matching Clark's DNA profile was found on the inside right breast area of the jacket, which was located in G.O.'s bedroom. Narrowing down the time frame during which the semen could have been deposited, G.O. testified that she had purchased the jacket two days before the assault. Consequently, if the jury did not believe Clark's testimony regarding his consensual sexual relations with G.O.'s mother, the jury could have reasonably inferred that Clark's semen was deposited on the green fleece jacket at some point during or after the assault.
See 
Bennett, 183 Colo. at 131, 515 P.2d at 469 (stating that the prosecution need not “exclude every reasonable hypotheses other than that of guilt”);
see also 
Sprouse, 983 P.2d at 778 (“[T]he trial court may not serve as a thirteenth juror and determine what specific weight should be accorded to various pieces of evidence or by resolving conflicts in the evidence.”).
 Reviewing the sufficiency of the evidence in this case under the substantial evidence test of
Bennett, we uphold Clark's sexual assault conviction. The prosecution presented the jury with physical evidence of Clark's DNA, which was found on a recently purchased item of clothing located in G.O.'s bedroom. The prosecution also presented circumstantial evidence tying Clark to the assault including: (1) G.O.'s description of her attacker, which was approximate to Clark's height, weight, and age; (2) the attacker wore a Carhartt-type jacket and Clark admitted owning one; (3) the attacker likely knew where G.O. lived and Clark had been to G.O.'s house prior to the assault; and (4) the attacker disregarded G.O.'s son's outcries and Clark knew of her son's disability. In accordance with our
Bennett test, we determine that the prosecution's evidence, when viewed in the light most favorable to the prosecution, is substantial and sufficient to allow a reasonable trier of fact to conclude that Clark sexually assaulted G.O.
III. Accordingly, we uphold the judgment of the court of appeals affirming Clark's conviction, but on different grounds. 1. We granted certiorari on the following issue:
 Whether the court of appeals erred in finding that crime scene DNA evidence, without further significant corroborative proof, is sufficient to identify Mr. Clark beyond a reasonable doubt as the perpetrator in this case and therefore sustain his sexual assault conviction.
 2. In briefing to us, Clark argues the uncertainty surrounding the timing of the semen's deposit by stating that he lived close to the store where G.O. purchased the green fleece jacket. However, this fact was not raised at trial, nor does Clark indicate that he deposited his semen on the green fleece jacket while it was for sale at the store. We do not speculate whether a jury could have drawn such an inference from the facts and evidence presented at trial. 3. The evidence presented at trial did not solve the mystery of the headband's owner or origin. Nonetheless, the headband was found in the area where the sexual assault occurred.