JUDGE BOORAS, dissenting.
¶ 49 I respectfully dissent because I would conclude that the evidence, viewed in the light most favorable to the verdict, is sufficient to establish that defendant, in the manner he drove his automobile, placed "another person" in danger of death or serious bodily injury. I would also reject defendant's additional contention that the evidence was insufficient to establish his use of his vehicle as a deadly weapon.
I. Sufficiency of the Evidence
¶ 50 Here, two incidents were established at trial. In the December 2005 incident, a police officer observed defendant driving in Arapahoe County about 9:30 p.m. without headlights. The officer attempted to pull him over by activating his lights. After defendant failed to pull over, his vehicle drifted over the dividing line several times. The officer testified that defendant's vehicle crossed into the lane of approaching traffic "about halfway over the road markers," then went all the way over across "the marker on the shoulder," and then back into the northbound opposing traffic lane. At that point, the officer noticed a vehicle approaching in the oncoming lane, so he activated his siren in addition to his lights.[1] The approaching vehicle pulled to the side, defendant drifted back into his own lane of traffic, and then swerved into a shallow ditch. Defendant continued driving in the ditch for about a block and a half, and hit a street sign, completely taking it out of the ground, before he returned to the southbound lane of traffic. Defendant approached an intersection with a red traffic light, and turned left through the red light without stopping or slowing down. He drove another couple of blocks, then turned into the parking lot of an apartment complex where he hit a curb and came to a stop.
¶ 51 In the October 2006 incident, an officer was dispatched to a Littleton intersection at 2:45 a.m. after it was reported that defendant was asleep at the wheel. His vehicle was stopped in the street at the intersection, still running, but defendant had his foot on the brake. No one was in the vicinity of defendant's vehicle when the officer arrived. Despite pounding on the window and yelling, it took the officer five minutes to wake defendant, who had a strong smell of alcohol on his breath and difficulty maintaining his balance when he finally exited the vehicle.
¶ 52 Based on these two incidents, defendant was convicted of attempted reckless manslaughter and attempted second degree assault. As the majority notes, attempted reckless manslaughter requires a substantial step towards recklessly causing the death of another. Attempted assault with a deadly weapon requires a substantial step towards causing serious bodily injury with a deadly weapon. As such, both of these offenses contemplate the possibility of death or serious bodily injury to another person.
¶ 53 As an initial matter, it is unnecessary to decide whether actions that threaten the "general public" are sufficient to establish that "another person" was put in danger, because there was at least one actual, discernible driver who was threatened in the first incident. I agree that the evidence of the second incident does not establish that defendant placed another discernible person in danger. However, I would conclude that the evidence of the first incident is sufficient to establish that another specific person was placed in danger. Because the jury found by special verdict form that both incidents supported the attempted second degree assault charge and the attempted reckless manslaughter *144 charge, both convictions can rest on the first incident.[2]
¶ 54 The evidence established that another vehicle was approaching from the opposite direction and pulled over at a time when defendant had pulled halfway into that driver's lane of traffic. The majority concludes that this driver was not actually placed in danger because: (1) the vehicle was 100 to 150 feet away from defendant after it pulled to the side and (2) the officer offered an opinion on cross-examination that defendant's driving did not jeopardize or threaten oncoming traffic. In other words, the majority requires a "near miss" before another person is considered endangered by defendant's driving.
¶ 55 A "near miss," however, is not required to conclude that another driver has been placed in danger of death or serious bodily injury. The majority reasons that there was no danger to the other driver here because the two vehicles were separated by at least 100 to 150 feet, or "half the length of a football field."[3] However, it is not clear whether Officer Hyde's estimate of 100 to 150 feet pertained to the minimum distance between the two vehicles during the entire incident, or the distance at the point where the other driver elected to pull off the road. Because defendant and the other car were traveling in opposite directions, it is undisputed that after encroaching into the oncoming traffic lane, defendant drove his car past the other car, albeit in his own lane of traffic at that point. Officer Hyde stated "correct" when asked "when those vehicles passed [defendant], [defendant] had already moved back into his lane, true?" Thus, the evidence supports an inference that defendant's driving could have resulted in a collision had the timing been slightly different and had the motorist not pulled off the road.
¶ 56 In the context of sufficiency of the evidence to support a deadly weapon finding requiring that another person was put into "actual danger," the Texas Court of Criminal Appeals rejected the view that other motorists were not put into actual danger because the defendant "neither attempted to strike motorists with his vehicle nor forced motorists to take evasive action." Drichas v. State, 175 S.W.3d 795, 799 (Tex.Crim.App.2005). The Texas court concluded that when the intoxicated defendant drove on the wrong side of the highway at the time that "some" traffic was present on the road, a rational trier of fact could have determined that the defendant used his vehicle as a deadly weapon. Id. at 798.
¶ 57 Here, although the approaching vehicle managed to maintain a reasonably safe distance, that driver nevertheless felt a need to move from defendant's path of travel after defendant had crossed over the dividing line. Defendant's lack of control over his vehicle is demonstrated by the fact that after crossing the center line, he drove into a ditch on the other side of his lane, and hit a street sign. Simply because another driver managed to circumvent a collision by luck and good defensive driving skills does not mean that the driver was not threatened by defendant's driving.
¶ 58 The officer's testimony that there was no threat to oncoming traffic does not require a different conclusion. The jury could have viewed the officer's statement as an observation that the approaching driver managed to avoid a threat by an early defensive maneuver. Additionally, the jury was not required to credit the officer's statement. Gonzales v. People, 128 Colo. 522, 526, 264 P.2d 508, 510 (1953) ("The jury determines what witnesses are worthy of credit and *145 gives credit accordingly, and it is not obligated to accept as true the testimony of any witness, notwithstanding such witness has not been contradicted or impeached."). Under the appellate standard of review for sufficiency of the evidence, we must view that testimony in the light most favorable to the verdict. Clark v. People, 232 P.3d 1287, 1291 (Colo.2010).
¶ 59 Similarly, the failure of Officer Hyde to issue defendant a summons for reckless driving, and the opinion of Investigator Malone that additional charges based on defendant's driving were not warranted are irrelevant. The District Attorney, not the police, determines what criminal charges should be filed. People v. Dist. Court, 632 P.2d 1022, 1024 (Colo.1981) ; Myers v. Dist. Court, 184 Colo. 81, 85, 518 P.2d 836, 838 (1974).
¶ 60 Simply because the Colorado General Assembly has not enacted legislation that would enhance punishment of multiple DUI offenders does not mean that the District Attorney could not elect to file charges under the facts of this case for attempted reckless manslaughter and attempted assault with a deadly weapon. "Generally, the prosecution has discretion to determine what charges to file when a defendant's conduct violates more than one statute." People v. Stewart, 55 P.3d 107, 118 (Colo.2002). A person does not need to drive dangerously to be guilty of DUI. Conversely, a person does not need to be intoxicated to be guilty of offenses based on dangerous driving. Here, defendant's actions violated the DUI statute as well as the statutes that forbid attempted reckless manslaughter and attempted assault with a deadly weapon. The prosecution acted within its discretion to charge defendant with the more serious offenses, particularly in light of his criminal history.
¶ 61 Finally, although the majority does not address defendant's argument that the prosecution failed to show that he used or intended to use his vehicle as a deadly weapon, I would also reject that challenge to the sufficiency of the evidence for the same reasons discussed above. Accordingly, I would reject the conclusion of the majority in People v. Esparza-Treto, 282 P.3d 471, 476 (Colo. App.2011), that to qualify as a deadly weapon, an object must be specifically "directed toward an intended opponent or adversary." See Stewart, 55 P.3d at 117 (a motor vehicle may be a deadly weapon depending on how it is used in a particular situation). The extreme danger created by defendant's condition and manner of driving was more "reprehensible" than "mere reckless driving of a vehicle as a vehicle" and qualified as use of a deadly weapon. Id . at 118.
II. Other Claims
¶ 62 As to defendant's remaining contentions for reversal, I would conclude that those are also without merit. Thus, I would affirm the convictions.

Behind the vehicle that pulled over, the officer noticed other cars that were also traveling northbound.

Convictions on two different counts may be based on the same act or series of acts arising from the same criminal episode. If the evidence supporting the convictions is identical, concurrent sentences must be imposed, as they were here. See Juhl v. People, 172 P.3d 896, 897 (Colo.2007) (citing § 18-1-408(2) -(3), C.R.S.2014 ).

The majority notes two references to "100 to 150 yards " rather than "feet," one in the probable cause affidavit prepared by Investigator Knight and the other in trial testimony of Investigator Malone. However, Officer Hyde, who had actually observed the incident, consistently referenced "feet" in his trial testimony. To the extent that the testimony is conflicting, in reviewing sufficiency of the evidence we view the evidence in the light most favorable to the verdict. Clark v. People, 232 P.3d 1287, 1291 (Colo.2010).