22CA1269 Peo v Fletcher 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1269
Weld County District Court No. 20CR952
Honorable Vincente G. Vigil, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brian Robert Fletcher,

Defendant-Appellant.

---

JUDGMENT VACATED IN PART, AFFIRMED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE BROWN
Harris and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Brian Robert Fletcher, appeals the judgment of conviction entered upon jury verdicts finding him guilty of the attempted reckless manslaughter and felony menacing of Roger Skeers.  Fletcher contends that (1) the evidence was insufficient to support his convictions for attempted reckless manslaughter and menacing; (2) his conviction for attempted reckless manslaughter violates his equal protection rights; and (3) the mittimus incorrectly lists crime of violence sentence enhancers.  Because we agree that the evidence was insufficient to support Fletcher's conviction for menacing Skeers, we reverse that conviction.  We also agree that the mittimus incorrectly lists crime of violence sentence enhancers.  Therefore, we remand to the district court to vacate Fletcher's menacing conviction against Skeers and to correct the mittimus.  We otherwise affirm.

## I.     Background

¶ 2     The evidence presented during a four-day jury trial allowed the jury to find the following facts.

¶ 3     Fletcher lived on a 7-acre property owned by his common law wife, Whitney Moore.  They rented out a portion of the property to Fletcher's friend, Richard Marsaw, to store six fifty-three-foot

trailers. In March of 2018, Marsaw started to live on the property in an RV next to Moore and Fletcher's house. Marsaw did not consistently pay the monthly rent and stored more than what was agreed on the property. By May or June of 2019, Marsaw had stopped paying any rent. And in August, Moore gave Marsaw a notice to vacate the property, but he ignored it.

¶ 4 Around February of 2020, Marsaw invited his and Fletcher's friend, Roger Skeers, to live on the property. Moore did not give Skeers permission to live on the property, but Skeers told Fletcher he was purchasing a camper that Marsaw had stored there. Skeers lived in the camper next to Marsaw's RV.

¶ 5 In March, Weld County notified Moore that she was violating zoning regulations because of the "business" on the property — i.e., the trailers, trucks, and cars Marsaw worked on and stored there. Moore again gave Marsaw a notice to vacate, but he again ignored it.

¶ 6 On the morning of May 5, Fletcher was agitated and told Moore that he "would like to go shoot [Marsaw]." Fletcher was still agitated that afternoon and unable to calm down. Moore remembered smelling alcohol on Fletcher's breath. Moore saw

2

Fletcher go outside with his gun and thought he was going to shoot prairie dogs.

¶ 7 Instead, Fletcher approached Marsaw, who was working on the property about forty to fifty feet from a blue metal storage container called a Conex. Marsaw was not aware Fletcher had come up to him until he heard Fletcher yell that he had to get off the property immediately. Marsaw responded by asking, "What are you talking about?" Fletcher then raised his gun, pointed it at Marsaw, and started shooting from about fifteen to twenty feet away. Marsaw testified that Fletcher remained stationary while shooting at him.

¶ 8 After Fletcher fired the first shot, Marsaw turned and started running toward the forty-foot-long Conex. Marsaw remembered hearing four shots total. Marsaw said that he ran behind an open door of the Conex and heard one of the shots, possibly the third, hit the door.

¶ 9 Meanwhile, Skeers had been working about twenty feet inside the Conex when he heard Fletcher yell and fire his gun. Skeers was grazed by a bullet that ricocheted off the Conex door and into the container. Skeers yelled that he had been hit. After Fletcher asked,

"Are you sure? Are you sure?", he turned and walked back to his house.

¶ 10    The prosecution charged Fletcher with two counts of attempted murder in the first degree and two counts of felony menacing — one count of each as to Marsaw and one count of each as to Skeers. It also charged Fletcher with one count of second degree assault as to Skeers and two crime of violence sentence enhancers. After considering lesser included offenses, a jury convicted Fletcher of two counts of attempted reckless manslaughter, two counts of menacing, and one count of third degree assault. The district court merged the third degree assault conviction into the attempted reckless manslaughter conviction for Skeers.

¶ 11    The district court sentenced Fletcher to two consecutive three-year sentences in the custody of the Department of Corrections (DOC) for the attempted reckless manslaughter convictions, and two concurrent three-year sentences in the DOC for the menacing convictions. Fletcher does not appeal his convictions involving Marsaw as the victim.

## II.    Sufficiency of the Evidence

¶ 12    Fletcher contends that there was insufficient evidence to sustain his convictions for attempted reckless manslaughter and menacing as to Skeers.  We conclude that Fletcher may not raise a sufficiency challenge to his conviction for attempted reckless manslaughter, but we agree with Fletcher that the prosecution presented insufficient evidence to sustain his menacing conviction.

### A.    Standard of Review

¶ 13    "We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction."  *McCoy v. People*, 2019 CO 44, ¶¶ 34, 63.  We must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *Id.* (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).  "The pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Clark*, 232 P.3d at 1292.

## B. Fletcher Invited Any Error as to Attempted Reckless Manslaughter

¶ 14 Fletcher contends that the prosecution failed to present sufficient evidence to sustain his conviction for attempted reckless manslaughter as to Skeers. The People argue that Fletcher invited any error by asking the district court to instruct the jury on attempted reckless manslaughter. In response, Fletcher argues that defense counsel's request for a lesser included jury instruction was only in relation to Marsaw, not Skeers. We agree with the People.

### 1. Additional Background

¶ 15 At trial, the defense theory of the case was that Fletcher was drunk and reckless but never intended to kill anyone. Defense counsel asked the district court to instruct the jury on attempted reckless manslaughter as a lesser included offense of attempted murder as to both Marsaw and Skeers. The court confirmed counsel's request for the lesser included offense instruction several

times, and counsel never indicated that the instruction should apply only as to Marsaw.

¶ 16    Defense counsel approved the final version of the jury instructions.  Instruction 19 provides, in relevant part, that

> [i]f you are not satisfied beyond a reasonable doubt that Mr. Fletcher is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged if the evidence is sufficient to establish his guilty of the lesser offense by a reasonable doubt.
>
> The offense of [a]ttempted [m]urder in the [f]irst [d]egree, as charged in the information in this case necessarily includes the lesser offense of [a]ttempted [m]anslaughter.

Instruction 19 then sets forth the elements of attempted manslaughter.  Unlike the elemental instruction for second degree assault — which specifically names Skeers as the victim — Instruction 19 does not specify that it applies to a single or particular victim.

¶ 17    Defense counsel also approved the final verdict forms, which included one verdict form that listed charges for attempted murder and attempted manslaughter as to Marsaw and a separate verdict form that listed charges for attempted murder and attempted

7

manslaughter as to Skeers. In fact, the only change defense counsel requested be made to the verdict forms was to include Marsaw's and Skeers' names in the body as well as the title of the instruction.

2. Analysis

¶ 18    The invited error doctrine prevents a party from complaining on appeal of an error they have invited or injected into the case. *People v. Rediger*, 2018 CO 32, ¶ 34. Invited error is a narrow doctrine that applies to errors in trial strategy but not errors resulting from oversight. *Id.* Where a defendant makes "the tactical choice to request" that a lesser included offense be submitted to the jury, "he is effectively estopped from asserting on appeal that, notwithstanding his representation at trial, there was actually insufficient evidence to reach the jury and support conviction of that charge." *Montoya v. People*, 2017 CO 40, ¶ 31.

¶ 19    Contrary to Fletcher's assertions, the record does not reflect that defense counsel's strategic decision to request a jury instruction on the lesser included offense of attempted reckless manslaughter related solely to Marsaw. Rather, the record shows that counsel affirmatively asked for the jury to be instructed on the

8

lesser included offense and never clarified that it should apply only to Marsaw and not Skeers. On the contrary, counsel approved of a separate verdict form asking the jury whether Fletcher committed attempted manslaughter *as to Skeers*. By requesting an instruction on attempted reckless manslaughter, counsel represented that there was "a rational basis in the evidence to support a verdict acquitting him of a greater offense . . . and convicting him of the lesser offense." *People v. Brown*, 218 P.3d 733, 736 (Colo. App. 2009) (quoting *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo. 1983)).

¶ 20 On this record, we conclude that defense counsel made a strategic decision to request a jury instruction on attempted reckless manslaughter as to Skeers and, as a result, Fletcher cannot assert on appeal that the evidence was insufficient to sustain that conviction. *See Montoya*, ¶ 31; *Rediger*, ¶ 34.

C. The Prosecution Presented Insufficient Evidence to Support the Felony Menacing Conviction

¶ 21 Fletcher contends that the prosecution failed to present sufficient evidence to sustain his conviction for felony menacing as to Skeers.

9

¶ 22    A person commits menacing "if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206, C.R.S. 2024.  At the time of Fletcher's offense, menacing was a class 5 felony if committed by using a deadly weapon. § 18-3-206(1)(a)-(b), C.R.S. 2021.

¶ 23    Felony menacing is a general intent crime and requires that a defendant "is aware that his conduct is practically certain to cause the result." § 18-1-501(6), C.R.S. 2024; *see also People v. Crump*, 769 P.2d 496, 498 (Colo. 1989).  Direct evidence of the defendant's awareness is not necessary; rather, "the defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances." *People v. Manzanares*, 942 P.2d 1235, 1239 (Colo. App. 1996).

¶ 24    Fletcher does not contest that he used a deadly weapon — a gun — or that a reasonable person would be placed in fear of imminent serious bodily injury by his use of a gun.  Rather, Fletcher asserts that there was no evidence he knowingly placed or attempted to place Skeers in fear of imminent serious bodily injury because there was no evidence he was aware Skeers was in the

storage container or in the general area when he fired his gun at Marsaw. We agree.

¶ 25 The record shows that Fletcher knew Skeers lived on the property, but the camper Skeers lived in was on the other side of the property from where he was working when Fletcher shot at Marsaw. Nothing in the record even suggests that Fletcher knew Skeers was in the area when Fletcher aimed or shot his gun at Marsaw. When Fletcher raised his gun to shoot, he was about fifteen to twenty feet away from Marsaw, Marsaw was forty to fifty feet from the Conex, and Skeers was twenty feet inside the Conex. And Marsaw testified that Fletcher remained standing in the same place once he started shooting. No one testified that Fletcher heard or saw Skeers or otherwise had any idea that Skeers was inside the Conex. And no one testified that Skeers saw Fletcher holding the gun or shooting at Marsaw.

¶ 26 Even viewing the evidence as a whole and in the light most favorable to the prosecution, *see Clark*, 232 P.3d at 1291-92, we conclude that no rational juror could have found beyond a reasonable doubt that Fletcher was aware that his conduct was practically certain to place Skeers in fear of imminent serious bodily

11

injury. *See People v. Perez*, 2016 CO 12, ¶ 25 ("A verdict cannot be supported by guessing, speculation, conjecture, or a mere modicum of relevant evidence."); *McBride v. People*, 2022 CO 30, ¶ 44 (reversing a defendant's conviction for a tail lamp violation because the evidence did not support a reasonable inference of a violation and "[t]o conclude otherwise would amount to nothing more than speculation, which cannot support a jury's verdict"). Thus, we conclude that the evidence was insufficient to sustain Fletcher's conviction for menacing Skeers, and we vacate that conviction.[1]

### III.    Equal Protection Challenge

¶ 27    For the first time on appeal, Fletcher contends that his conviction for class 5 felony attempted reckless manslaughter violates his right to equal protection under the Colorado Constitution because, as applied, it proscribes the same conduct as

---

[1] We acknowledge that defense counsel asked the jury to convict Fletcher of menacing in closing argument. But argument is not evidence, *see People v. Rhea*, 2014 COA 60, ¶ 68 (recognizing that argument is not evidence), and we are not aware of any authority holding that counsel's legal concession in closing argument by itself can waive a defendant's right to challenge the sufficiency of evidence.

reckless endangerment, a class 2 misdemeanor.  *See*

§§ 18-3-104(1)(a), 18-3-208, C.R.S. 2024.

¶ 28     It is undisputed that Fletcher did not preserve this issue.  We have the discretion to address an unpreserved as-applied constitutional challenge, but only when doing so clearly furthers judicial economy.  *People v. Houser*, 2013 COA 11, ¶ 35.

¶ 29     To support his as-applied equal protection challenge, Fletcher reiterates his claim that he was unaware of Skeers' presence and argues only that "[t]here is no intelligent means of distinguishing conduct arguably creating a slight risk of death to an unintended victim from conduct creating a higher risk of serious bodily injury." This argument is underdeveloped and, as articulated, requires further factual development.  Thus, we decline to address it.  *See People v. Rodriguez-Morelos*, 2022 COA 107M, ¶ 49 (declining to address a defendant's conclusory and underdeveloped argument); *People v. Mountjoy*, 2016 COA 86, ¶ 37 (inadequacy of the record disfavors addressing an as-applied challenge for the first time on appeal); *see also People v. Allen*, 78 P.3d 751, 752 (Colo. App. 2001) (declining to address unpreserved claim that, as applied, attempted reckless manslaughter proscribes conduct identical to reckless

endangerment), *overruled on other grounds by Lopez v. People*, 113 P.3d 713 (Colo. 2005).

## IV. Mittimus

¶ 30     The parties agree that Fletcher's mittimus should be amended to remove two crime of violence convictions because he was not convicted of any crimes to which the crime of violence sentence enhancer applies.  Reviewing de novo, *see People v. Mendenhall*, 2015 COA 107M, ¶ 84, we agree.  *See* § 18-1.3-406(2)(a)(II), C.R.S. 2024 (listing crimes subject to "crime of violence" sentence enhancer).  It appears that including the crime of violence convictions was a clerical error, which can be corrected at any time. *See* Crim. P. 36.  Accordingly, we remand the case to the district court to correct the mittimus.  *See Mendenhall*, ¶ 84 (it is proper to remand to the district court to correct the mittimus to reflect the court's rulings).

## V. Disposition

¶ 31     We affirm the judgment of conviction for attempted reckless manslaughter of Skeers but vacate the judgment of conviction for felony menacing of Skeers.  We remand the case to the district court

14

to correct the mittimus consistent with this opinion.  We leave undisturbed any part of the judgment not challenged on appeal.

JUDGE HARRIS and JUDGE LUM concur.