24CA1280 Peo v Wilds 04-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1280
Boulder County District Court No. 22CR445
Honorable Thomas F. Mulvahill, Judge
Honorable Nancy W. Salomone, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Christoper Wilds,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Fox and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Carrie Skahan, Alternate Defense Counsel, Colorado Springs, Colorado, for
Defendant-Appellant

¶ 1    Defendant, John Christoper Wilds, was convicted of first degree criminal trespass.  She now appeals this conviction.[1]  We affirm.

## I.    Background

¶ 2    In February 2022, Jose Lopez, the victim, woke up around 3 a.m. to get ready for work.  He turned on his car and went back into his home for a few minutes to finish getting ready.  Wilds, who claimed that vehicle exhaust triggered her seizures, walked over to Lopez's home.  Wilds "opened the outer door and went into the inner door and banged as loud as [she] could on the inner door."  Wilds was standing on an enclosed porch or mudroom as she banged on the inner door.  Both Wilds and Lopez called 911 to report the incident, and deputies soon arrived to question the parties involved.

¶ 3    Wilds was charged with first degree criminal trespass, and she was convicted after a bench trial.  § 18-4-502(1)(a), C.R.S. 2025.

---

[1] Wilds's pronouns are she/her.

II.    Analysis

¶ 4    Wilds contends that (1) there was insufficient evidence to convict her of first degree criminal trespass; (2) the court violated her constitutional right to present a defense when it wrongfully excluded evidence at trial; and (3) the cumulative effect of these errors requires that her conviction be vacated or reversed.  We are not persuaded.

A.    Sufficiency of the Evidence

¶ 5    Wilds argues that there was insufficient evidence to convict her of first degree criminal trespass because the prosecution did not prove that she knowingly entered Lopez's home.  She argues that she did not know that the mudroom was part of the dwelling or that she was trespassing by going through the outer door.  Wilds also argues that Lopez was the "only" eyewitness at trial, and his testimony was contradictory to statements he had previously given.

¶ 6    The People respond that there was sufficient evidence to prove that Wilds committed first degree criminal trespass.  They assert that the mudroom that Wilds entered to knock on the inner door was part of Lopez's dwelling.  And because Wilds did not have

permission to enter Lopez's dwelling, she committed first degree criminal trespass. We agree with the People.

### 1. Applicable Law and Standard of Review

¶ 7 "A person commits the crime of first degree criminal trespass [when] such person . . . [k]nowingly and unlawfully enters or remains in a dwelling of another." § 18-4-502(1)(a). A dwelling is a "building which is used, intended to be used, or usually used by a person for habitation." § 18-1-901(3)(g), C.R.S. 2025. And a building is defined as "a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property." § 18-4-101(1), C.R.S. 2025.

¶ 8 We apply the substantial evidence test to determine if the evidence was "sufficient both in quantity and quality to sustain the defendant's conviction." *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). In applying this test, we review the record de novo and consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v.*

3

*Bennett*, 515 P.2d 466, 469 (Colo. 1973)); *see McCoy v. People*, 2019 CO 44, ¶ 17.

### 2. Sufficient Evidence Supported Wilds's Conviction

¶ 9    First, Wilds argues that the court was wrong when it categorized the mudroom — where she was standing when she banged on the inner door — as part of the dwelling.

¶ 10    In *People v. Jiminez*, 651 P.2d 395, 396 (Colo. 1982), the Colorado Supreme Court ruled that, for the purposes of second degree burglary, a garage that was attached to a residence was considered a part of the dwelling. The court explained that the statutory definition of a "dwelling" does not "exclude . . . those parts of a residence that are not 'usually used by a person for habitation.' Moreover, at least some of the usual uses of a residential garage, including storage of household items, are incidental to and part of the habitation uses of the residence itself." *Id.* A division of this court later held that "the *Jiminez* rationale is equally applicable to first degree criminal trespass." *People v. Hanna*, 981 P.2d 627, 629 (Colo. App. 1998).

¶ 11    Evidence at trial established that when Wilds opened the outer door to get to Lopez's main door inside, she entered into the enclosed mudroom.  The mudroom was an enclosed attachment to Lopez's home, with an overhang on it.  The mudroom was used for storage, and it contained jackets, water, and other items that Lopez and his family used for their home.  Therefore, the mudroom was part of the dwelling because it was part of a structure that was designed for shelter and it was used to store household items.  *See Jiminez*, 651 P.2d at 396 ("[S]torage of household items[ is] incidental to and part of the habitation uses of the residence itself.").  We therefore conclude that the mudroom was part of Lopez's dwelling.

¶ 12    Next, Wilds argues that the prosecution did not present sufficient evidence to prove that she "knowingly" entered Lopez's dwelling.  She argues that her mental state did not show that she knew she was violating the criminal code.  As Wilds testified at trial, she "thought [she] was just entering a porch to knock on the door of the residence.  It never . . . occurred to [her] that what [she] was doing could be construed as a crime."

¶ 13 Section 18-1-501(6), C.R.S. 2025, states that "[a] person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when [s]he is aware that [her] conduct is of such nature or that such circumstance exists." But "[g]enerally speaking, where the law imposes criminal liability for certain conduct, the [knowingly] element requires 'no more than that the person charged with the duty knows what [s]he is doing. It does not mean that, in addition, [s]he must suppose that [s]he is breaking the law." *People v. Holmes*, 959 P.2d 406, 414 (Colo. 1998) (quoting *United States v. Dashney*, 937 F.2d 532, 538 (10th Cir. 1991)).

¶ 14 At trial, Wilds admitted to opening the outer door and "banging" on the inner door of Lopez's home during her 911 call. A recording of that call was admitted into evidence during trial. And the prosecutor asked Wilds, "And you had never before been given permission to enter . . . [the mudroom], correct?" Wilds responded "No."

¶ 15 This evidence was sufficient for a reasonable mind to conclude that Wilds was aware of what she was doing when she opened the outer door, entered the mudroom, and knocked on the inner door

6

without permission. She did not also need to know that her actions constituted first degree criminal trespass for this evidence to be sufficient to show that her actions were knowing.

¶ 16    Finally, Wilds argues that Lopez was the "only" eyewitness to testify, and he was not credible because his testimony was inconsistent with his previous statements. Wilds also notes that Lopez refused to provide police with a written statement on the morning of the incident.

¶ 17    Yet the trial court heard Lopez's inconsistent statements about whether the front door was locked and whether the window next to the outer door was functioning. It also heard that Lopez did not provide a written statement to police on the date of the incident. However, "contradictory and incomplete testimony is not uncommon." *Hanna,* 981 P.2d at 629. And "[t]he determination of credibility of witnesses and the weight to be given conflicting items of evidence rests with the fact-finder." *Id.* It was for the trial court, as the fact finder in this case, to determine Lopez's credibility. As an appellate court, it is not our role to reweigh the evidence or judge the credibility of witnesses. *See People v. Rivas,* 77 P.3d 882, 891 (Colo. App. 2003).

## B. Right to Present a Defense

¶ 18     Wilds contends that the court violated her constitutional right to present a defense when it erroneously ruled that certain evidence would be inadmissible at trial.

### 1. Applicable Law and Standard of Review

¶ 19     Evidence must be relevant to be admissible. *People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. While relevant, evidence may be inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

¶ 20     "We review evidentiary rulings for an abuse of discretion. A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it is based on an incorrect understanding of the law." *People v. Schlehuber*, 2025 COA 50, ¶ 42 (citation omitted).

¶ 21     It is not the case that "every restriction on a defendant's attempts to challenge the credibility of evidence against [her], or

8

even every erroneous evidentiary ruling having that effect, amounts to a federal constitutional error." *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009). To the contrary, "a defendant may successfully assert a constitutional violation only where 'the trial court's ruling . . . barred the defendant from meaningfully testing evidence central to establishing [her] guilt.'" *People v. Gonzalez-Quezada*, 2023 COA 124M, ¶ 21 (quoting *People v. Dominguez-Castor*, 2020 COA 1, ¶ 70).

### 2. The Court Did Not Erroneously Exclude Evidence or Violate Wilds's Constitutional Rights

¶ 22 During a pretrial hearing, Wilds asked to present evidence that the Boulder County Sheriff's Department "had a vendetta against her for repeated complaints about racism[,] [an attempted murder in 2020,] and [a cocaine cartel's] drug dealing in her neighborhood." Wilds claimed that, because of this vendetta, the sheriff's department tried to find things to arrest her for and question neighbors "long enough to get something that they could arrest [her] for." The court clarified at the hearing that her proposed defense was that the sheriff's department influenced Lopez's statement because of the department's previous issues with Wilds

9

and this alleged vendetta. Besides her own testimony, Wilds wanted to call one of her doctors and representatives from a provider where she had previously received treatment.

¶ 23 The court ultimately issued a detailed order under CRE 401 and CRE 403 about what areas of testimony Wilds could elicit. It determined that while Wilds could testify that she believed that this vendetta existed, she could not testify as to why she believed it existed. The court noted that she could not "call witnesses to talk about the entire backstory of . . . the cartel that took control of the trailer park." However, the court allowed her to

- question Lopez about whether he was influenced or pressured in any way by the sheriff's department "to report things in the way that he reported them";
- question Lopez about Wilds's belief that his statements changed from his original law enforcement contact to his later trial statements;
- question the sheriff's deputies about whether they pressured Lopez to include certain details or change his story in any way;

- testify that the sheriff's department put a certain version of events in Lopez's head because Wilds believed that they have a vendetta against her; and

- testify that the sheriff's department told Wilds that they would start making false arrests or be aggressive with her during arrests.

¶ 24   The trial court did not abuse its discretion by setting these limits on the evidence Wilds could present.  Given the parameters described above, it is clear the court's primary concern was preventing the introduction of evidence that would violate Rule 403, and it implemented guardrails to do so.  It is true that evidence about whether sheriff's deputies influenced witnesses in the case was relevant to Wilds's defense.  And the court permitted that evidence.  It only barred the details of an alleged attempted murder that took place two years earlier and an apparent cocaine "cartel that took control of the trailer park."  We perceive no abuse of discretion in the trial court's ruling that these earlier events were irrelevant to the issues in the trial and would be unduly prejudicial.

¶ 25   Further, we conclude that the court's limitations did not violate Wilds's right to present a complete defense and test the

11

evidence against her. She was permitted to testify that the sheriff's office had a vendetta against her and to question Lopez and sheriff's deputies about their biases and any pressure exerted to make certain statements. Notably, Wilds did not ultimately question Lopez about any pressure from deputies to change his story, and she only briefly questioned a sheriff's deputy about bias. The court, therefore, did not completely bar Wilds from "meaningfully testing evidence central to establishing [her] guilt." *Gonzalez-Quezada,* ¶ 21 (quoting *Dominguez-Castor,* ¶ 70).

### C. Cumulative Error

¶ 26 Finally, Wilds contends that the cumulative effect of the trial court's errors requires that her conviction be vacated or reversed.

¶ 27 The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process." *Howard-Walker v. People,* 2019 CO 69, ¶ 24 (alteration in original) (quoting *People v. Lucero,* 615 P.2d 660, 666 (Colo. 1980)). Because we determine that the trial court did not err, the cumulative error doctrine does not apply. We therefore reject Wilds's last contention.

## III.   Disposition

The judgment is affirmed.

JUDGE FOX and JUDGE SULLIVAN concur.