23CA0339 Peo v Christian 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0339
City and County of Denver District Court No. 21CR6836
Honorable Edward D. Bronfin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher A. Christian,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Christopher A. Christian, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder. Christian contends that (1) the evidence was insufficient to sustain his conviction; (2) the district court erred by admitting an investigator's lay opinions concerning video evidence; (3) the court erred by admitting undated internet searches from Christian's cell phone; (4) the court erred by instructing the jury on the provocation exception to self-defense; and (5) the alleged errors cumulatively deprived him of a fair trial. We affirm.

## I.    Background

¶ 2    On November 20, 2021, Fabian Olguin and Francisco Flores, coworkers at the Denver Rescue Mission (the Mission), left work approximately two hours early. As the men exited the Mission, they passed Christian, who was standing outside the staff entrance with his phone in his hand. Christian followed the men across the parking lot, then passed the men and walked toward the parking lot's exit before circling back to stand behind Olguin's car.

¶ 3    Olguin got out of his car to confront Christian. After a brief verbal exchange, the two began to fight. Flores exited Olguin's vehicle to break up the fight but was unsuccessful. After Olguin

1

grabbed Christian's backpack and started to run away, Christian lunged at Olguin and swung his right arm at Olguin's chest at least four times. Olguin backed away from Christian, grabbed his chest, and told Flores, "[Christian] just stabbed me." Olguin was taken to the hospital and later died from a stab wound to his heart.

¶ 4    Based on these events, the prosecution charged Christian with first degree murder. At trial, defense counsel argued that Christian had acted in self-defense. The jury convicted Christian as charged, and the district court sentenced him to life in the custody of the Department of Corrections without the possibility of parole.

## II.    Sufficiency of Evidence

¶ 5    Christian contends that the prosecution presented insufficient evidence to sustain his conviction for first degree murder. Specifically, he contends that the record lacks sufficient evidence to support a finding beyond a reasonable doubt that he killed Olguin with the requisite intent and after deliberation. We disagree.

### A.    Standard of Review

¶ 6    When a defendant challenges the sufficiency of the evidence, we review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to

2

sustain the defendant's conviction. *Johnson v. People*, 2023 CO 7, ¶ 13. It does not matter whether we might have reached a different conclusion were we the trier of fact. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). Rather, "[t]he pertinent question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

¶ 7 The verdict must be supported by more than "guessing, speculation, conjecture, or a mere modicum of relevant evidence." *People v. Perez*, 2016 CO 12, ¶ 25. But in determining the sufficiency of evidence, we consider all the evidence admitted at trial, even evidence that was erroneously admitted, *People v. Hard*, 2014 COA 132, ¶ 39 (citing *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988)), and we make no distinction between direct and circumstantial evidence, *People v. Buckner*, 2022 COA 14, ¶ 83.

### B. Elements of First Degree Murder

¶ 8 Under section 18-3-102(1)(a), C.R.S. 2025, "[a] person commits the crime of murder in the first degree if[,] . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person."

¶ 9    To prove that the defendant acted "with intent," the prosecution must prove that it was his "conscious objective . . . to cause the specific result proscribed by the statute defining the offense." § 18-1-501(5), C.R.S. 2025.  Proof of intent largely depends on the surrounding circumstances of the alleged crime. *See, e.g., People v. Tucker*, 232 P.3d 194, 201 (Colo. App. 2009) ("Intent is the state of mind that exists at the time a person commits an offense . . . [and] may be inferred from his or her conduct and the reasonable inferences that may be drawn from the circumstances of the case." (citation omitted)).

¶ 10    The prosecution must also prove that the defendant acted "[a]fter deliberation." § 18-3-102(1)(a).  "The term 'after deliberation' means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act." § 18-3-101(3), C.R.S. 2025.  "An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." *Id.*  Even so, the length of time required for one to deliberate is not long.  *People v. Oliver*, 2020 COA 150, ¶ 10.  As with intent, the prosecution often must rely on circumstantial or indirect evidence to prove that the

4

defendant acted after deliberation. *People v. Sanchez*, 253 P.3d 1260, 1262 (Colo. App. 2010). "Such evidence may include the use of a deadly weapon, the manner in which it was used, and the existence of hostility . . . between the accused and the victim." *Id.* (quoting *People v. Dist. Ct.*, 779 P.2d 385, 388 (Colo. 1989)).

### C.    The Prosecution Presented Sufficient Evidence of Intent and Deliberation

¶ 11    Viewing the record in the light most favorable to the prosecution and giving the prosecution the benefit of every reasonable inference, we conclude that the evidence was sufficient to sustain Christian's first degree murder conviction. The circumstances surrounding the incident would allow a rational jury to find beyond a reasonable doubt that Christian acted with the requisite intent and after deliberation. *See Clark*, 232 P.3d at 1291.

¶ 12    At trial, the prosecution presented surveillance footage from the night of the incident that showed Christian standing outside the Mission's staff entrance as Olguin and Flores exited. As Christian started to follow the men, he can be seen flicking his right hand in a sharp downward motion and then placing his hands in his pockets. Christian initially walked past Olguin's car toward the exit of the

parking lot, but then he turned around, walked back, and stood behind Olguin's parked car, holding up his phone with the camera flash or flashlight illuminated and pointed toward the vehicle.

¶ 13 Olguin got out of the driver's side of the vehicle and began to approach Christian. The two exchanged words. Olguin momentarily stepped away but quickly turned back again as Christian took his backpack off his back, repositioned it in front of him, and began to reach into a pocket. Olguin grabbed Christian's backpack out of his hands and threw it on the ground as the pair began fighting. Flores exited the passenger side of Olguin's car and attempted to break up the fight. When Christian and Olguin briefly disengaged, Olguin ran around Flores and grabbed Christian's backpack off the ground. Christian reached into his pocket, lunged at Olguin, and swung his right arm at Olguin's chest at least four times. Olguin retreated backwards, grabbing the left side of his chest, while Christian reclaimed his backpack and left the Mission's parking lot.

¶ 14 At trial, Detective Neal Baker testified to what he perceived in the surveillance video that was played for the jury. Concerning the sharp downward motion Christian made with his right hand as he

started to follow Olguin and Flores, Detective Baker testified that the movement was "consistent with a motion that someone would make if they were opening a folded knife." Detective Baker also said that he would characterize Christian's behavior as "aggressive," adding that "it appear[ed] that Mr. Christian [was] hiking up his pants, taking off his backpack, and appear[ing] like he's getting ready to fight."

¶ 15     The prosecution also presented a recording of Detective Baker's interrogation of Christian following the incident. During the interrogation, Christian admitted that he stabbed Olguin with a small pocketknife that he had stored in his jacket pocket. Christian also told the detective that Olguin had a history of directing dirty looks at Christian, making fun of his voice, and using homophobic slurs, which led Christian to fear that Olguin would "kill [Christian] because [he is] gay."

¶ 16     Viewed collectively, this evidence would allow a rational trier of fact to infer that it was Christian's "conscious objective" — his intent — to kill Olguin. § 18-1-501(5). Christian's concession that Olguin had a history of calling him homophobic slurs and directing "dirty looks" in his direction established a motive. *See, e.g., People*

7

*v. Villanueva*, 2016 COA 70, ¶ 55 (a defendant's motive may be relevant to show their intent at the time of the alleged offense). Christian admitted he used a deadly weapon — a knife — to stab Olguin in the chest. The surveillance footage confirms that Christian lunged at Olguin and swung his knife at Olguin's chest at least four times. And Christian ultimately succeeded in stabbing Olguin in the heart, an injury likely to cause death. *See People v. Valenzuela*, 825 P.2d 1015, 1016 (Colo. App. 1991) ("The location of the stab wound [in the heart] indicates the use of the knife in a manner clearly intended to cause death."), *aff'd*, 856 P.2d 805 (Colo. 1993).

¶ 17    In situations where a defendant uses a deadly weapon on a victim at close range, a jury may reasonably infer that it was the defendant's conscious objective to cause the victim's death. *See People v. Madson*, 638 P.2d 18, 26 (Colo. 1981) ("The circumstances surrounding the victim's death permit the reasonable inference that the defendant fired a pistol at close range into her skull in a manner clearly intended to cause death."); *Oliver*, ¶ 9 ("[A] juror could reasonably infer from the evidence that [the defendant's]

conscious objective was to cause [the victim's] death when he fired multiple shots at him at close range.").

¶ 18    We similarly conclude that this evidence would allow a rational juror to infer that Christian stabbed Olguin after exercising reflection and judgment.  *See* § 18-3-101(3).  Christian's motive to kill Olguin was some evidence that he acted after deliberation.  *See Madson*, 638 P.2d at 26 (proof of deliberation may take the form of enmity, hostility, or other manifestations of ill will between the accused and the victim).  As were the "circumstances attending the killing," including the manner in which Christian used a deadly weapon to kill Olguin.  *Id.*; *see Sanchez*, 253 P.3d at 1262 (the jury could reasonably infer that the defendant exercised judgment based on where he stabbed the victims — in the chest, neck, and back — "because of the degree of harm that may result from stabbing a person in those places").

¶ 19    A rational juror could also reasonably infer that Christian acted after deliberation based on his conduct immediately preceding the stabbing.  As reflected in the surveillance video, Olguin and Flores did not interact with Christian when they passed him at the Mission's staff entrance, yet Christian followed the men across the

parking lot. Although Christian continued past the men at first, he circled back and stood behind Olguin's car to block his exit, holding up his phone with the camera flash or flashlight illuminated. From Christian's about-face, a reasonable juror could infer that he exercised reflective thought before provoking an altercation with Olguin. *See Valenzuela*, 825 P.2d at 1016 (the jury could infer intent and deliberation from, among other evidence, the fact that the victim did nothing to provoke the incident, nor made any sudden or startling movements).

¶ 20   According to Detective Baker's testimony, Christian opened the folded knife as soon as he started following the men, allowing a reasonable juror to infer that Christian planned to use the knife during his interaction with Olguin. *See Sanchez*, 253 P.3d at 1262 ("[T]he jury reasonably could have inferred [that the] defendant acted after exercising reflection because he unfolded the knife before the stabbings."). Detective Baker also testified that Christian appeared to be "ready for a fight" and was behaving aggressively. *See id.* (The defendant's statements, "We're ready for this," and "You don't want to do this," were evidence that the defendant "consciously decided to stab the victims.").

¶ 21     For three reasons, we are not persuaded to reach a different conclusion by Christian's arguments that "proof of [his] intent and deliberations rest[ed] entirely on speculation and conjecture" and that there is "nothing in this sequence of events to show that [he] intended to kill Olguin or had time to deliberate."

¶ 22     First, these arguments rest on the faulty premise that we must ignore Detective Baker's testimony about what can be seen in the surveillance video because it was speculative.  Speculative or not, Detective Baker's testimony was before the jury, so we consider it in evaluating whether the evidence was sufficient to sustain Christian's conviction.  *See Hard*, ¶ 39; *People v. Williams*, 183 P.3d 577, 581 (Colo. App. 2007).

¶ 23     Second, Christian essentially asks us to reweigh the evidence, drawing all inferences in his favor.  But when evaluating a sufficiency challenge, "we must give the prosecution the benefit of every reasonable inference which may be fairly drawn from the evidence."  *Clark*, 232 P.3d at 1292; *see also People v. Grant*, 174 P.3d 798, 812 (Colo. App. 2007) ("[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction.").

11

¶ 24 Third, we reject the argument that Christian did not have time to deliberate before stabbing Olguin. Although the altercation between Christian and Olguin lasted under two minutes, the length of time required for a defendant to deliberate need not be long. *Oliver*, ¶ 10. And at least some evidence supported the inference that Christian decided to kill Olguin before the night of the fight because Olguin had a history of harassing Christian for being gay. *See Sanchez*, 253 P.3d at 1262.

¶ 25 Thus, we conclude that a rational trier of fact could have found all the essential elements of first degree murder beyond a reasonable doubt. *See Clark*, 232 P.3d at 1291.

### III. Detective Baker's Statements

¶ 26 Christian contends that the district court abused its discretion by permitting Detective Baker to opine that the surveillance footage of the incident showed that Christian (1) behaved aggressively, while Olguin did not; and (2) flicked open a folded knife as he approached Olguin. Christian also contends that the court erred by denying his motion for a mistrial following the admission of statements Detective Baker made while interrogating Christian. We perceive no basis for reversal.

## A. Additional Background

¶ 27 At trial, the prosecutor asked Detective Baker several questions about what he observed while watching the surveillance footage of the incident. As relevant here, the prosecutor first asked Detective Baker whether he observed the defendant make a motion with his right hand, and the detective responded, "Yes." The prosecutor asked whether Detective Baker had personal experience with folding knives, and the detective responded, "Yes." Finally, the prosecutor asked Detective Baker whether the motion Christian made is "consistent with a motion that someone would make if they were opening a folding knife?" Detective Baker said, "Yes."

¶ 28 The prosecutor then provided Detective Baker with still frames from the surveillance video depicting Christian as he made the motion. Detective Baker testified that the images showed Christian holding a "shiny object" that was "consistent with a metal knife."

¶ 29 Defense counsel repeatedly objected to the exchange, including under CRE 701. The court overruled the objections, reasoning that Detective Baker's testimony was based on his personal observations and did not require specialized knowledge.

¶ 30    Later in the direct examination, the prosecutor asked Detective Baker if he had ever personally observed someone acting in an aggressive manner.  Detective Baker responded that he had. The prosecutor asked Detective Baker if he noticed either Olguin or Flores acting in a manner that he would describe as aggressive, and Detective Baker responded, "No."  Then the prosecutor asked whether Detective Baker observed Christian behaving aggressively. Detective Baker said, "Yes," adding, "[I]t appears that Mr. Christian is hiking up his pants, taking off his backpack, and appears like he's getting ready to fight."

¶ 31    Defense counsel repeatedly objected, citing CRE 402 and 701. The court overruled the objections, reasoning that Detective Baker's testimony was appropriate lay testimony based on his personal observations and did not require specialized knowledge.

¶ 32    The prosecutor later moved to admit a redacted recording of Detective Baker's interrogation of Christian.  Defense counsel "renew[ed] the objections previously made to the video."  The court

referred counsel to its earlier rulings and admitted the redacted interrogation recording into evidence.[1]

¶ 33 After the interrogation video played for the jury, defense counsel moved for a mistrial, arguing that Detective Baker had improperly opined on Christian's nature for aggressiveness both in the interrogation video and during his in-court testimony. As relevant here, defense counsel argued that Detective Baker opined in the interrogation recording that Christian was "ready to fight" and that the opinion inappropriately spoke to the ultimate issue in the case — namely, whether Christian was the initial aggressor in his confrontation with Olguin. The court explained that the parties had already presented specific objections to the recorded interrogation, but that the statement now challenged by defense

---

[1] The day before, the prosecutor indicated that he planned to introduce the video recording of Detective Baker's interrogation of Christian into evidence. Defense counsel asked the district court to require the prosecutor to redact parts of the video on the basis that the statements were inadmissible opinions by Detective Baker concerning Christian's aggressiveness. The court redacted the requested parts of the interrogation video. The redactions defense counsel requested at trial did not include the parts of the video Christian now challenges on appeal.

15

counsel was not included in those objections. Therefore, the court denied defense counsel's request for a mistrial on that basis.

## B. Standard of Review

¶ 34 We review a trial court's evidentiary rulings for an abuse of discretion. *Hard*, ¶ 22. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People v. Sims*, 2019 COA 66, ¶ 44.

¶ 35 When a defendant objects to the admission of evidence at trial, we review any error under the harmless error standard. *Hard*, ¶ 23. Under this standard, we reverse only if the error "affects the substantial rights of the parties." *Hagos v. People*, 2012 CO 63, ¶ 12. "[A]n objected-to trial error is harmless if there is no reasonable possibility that it contributed to the defendant's conviction." *Pernell v. People*, 2018 CO 13, ¶ 22.

¶ 36 When a defendant fails to object to the admission of evidence at trial, we review for plain error. *Hagos*, ¶ 14. Plain error is error that is obvious and substantial, such that it "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (citation omitted). For an error to be obvious it must contravene a statute or

rule, a well-settled legal principle, or established Colorado case law. *Campbell v. People*, 2020 CO 49, ¶ 25. Further, "the error must be one that 'is so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." *Romero v. People*, 2017 CO 37, ¶ 6 (quoting *People v. Ujaama*, 2012 COA 36, ¶ 42).

### C. Detective Baker's Opinion Testimony About What He Observed in the Surveillance Video Was Harmless

¶ 37    Christian contends that the district court erred by admitting Detective Baker's opinion testimony about Christian flicking open a knife and his aggressive behavior because it was not based on firsthand observation but was instead an interpretation of evidence to which the jury had equal access. In other words, Christian contends that Detective Baker's testimony formed conclusions for the jurors that they were competent to reach on their own.

Although we agree that the district court erred by admitting this evidence, we conclude that the error was harmless.[2]

¶ 38    Under CRE 701, a lay witness may testify in the form of an opinion that is (1) rationally based on the witness's perception; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702.  Consequently, a lay witness can testify to what happened at a certain place and time if the witness had sufficient opportunity to observe those events as they occurred.  *See People v. McFee*, 2016 COA 97, ¶ 74.  But the witness may not "form conclusions for jurors that they are competent to reach on their own."  *Id.* at ¶ 76.  Appropriate lay opinion testimony "has the effect of describing

---

[2] Christian also contends that Detective Baker's testimony about the knife flick was unqualified expert testimony in the guise of lay testimony and that his testimony about Christian's aggressive behavior was inadmissible because it (1) told the jury what result to reach and (2) constituted inadmissible speculation.  Since we agree that the district court erred by admitting Detective Baker's opinions about what was reflected in the surveillance video because the jury was equally well-positioned to form its own conclusions from viewing the same evidence, we need not address these alternative contentions.  No matter the basis for the court's error, we conclude that admitting the evidence was harmless.

something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a firsthand witness to a particular event." *Id.* (quoting *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)).

¶ 39    Detective Baker testified as a lay witness. He did not observe the crime or otherwise have any firsthand knowledge about what occurred that night; his opinions were based entirely on his review of a video that was admitted into evidence and published to the jury. "[T]he jury was in precisely the same position as the detective" to watch the surveillance video and form its own conclusions about Christian's hand movement and behavior. *Id.* Thus, we agree with Christian that the court abused its discretion by admitting Detective Baker's statements that Christian flicked open a knife and acted aggressively. *See People v. Vergari*, 2022 COA 95, ¶ 19 (the district court erred by permitting an expert witness to opine on events shown in recordings because he did not observe what occurred firsthand or have any personal knowledge about the content of the videos). Nevertheless, we conclude that any error was harmless. *See Hard*, ¶ 23.

¶ 40    In *Vergari*, ¶ 19, a division of this court determined that it was improper for an expert in forensic imaging to narrate video evidence of the crime. But the division concluded that the trial court's error in admitting the testimony was harmless because (1) the jury had access to the videos during the expert's testimony and throughout its deliberations; (2) the court instructed the jury that it was free to disregard the expert's opinions and come to its own conclusions based on the evidence presented; and (3) the expert's testimony was "limited to simple and brief descriptions of what he observed in the videos" and did not include opinions about the defendant's "actions or motivations during the altercation." *Id.* at ¶ 20.

¶ 41    We find the *Vergari* division's analysis persuasive. As in *Vergari*, the jury here had access to the surveillance video both during Detective Baker's testimony and during its deliberations. It had the opportunity to decide for itself whether Christian's hand gesture looked like flicking open a knife and whether Christian acted aggressively toward Olguin. Unlike *Vergari*, Detective Baker was not offered or qualified as an expert, so the jury was unlikely to give his opinion extra weight. And similar to *Vergari*, the district court instructed the jury that it "may believe all of the testimony of

20

a witness, part of it, or none of it." It also instructed the jury that it should consider "the witness's ability to observe, . . . how that person obtained [their] knowledge[,] . . . [and] how the testimony of the witness is supported or contradicted by other evidence in the case." We presume that the jury followed the court's instructions, *People v. Reed*, 2013 COA 113, ¶ 28, so "the jury had no reason to accept [Baker's] opinion[s]" and was free to evaluate Christian's conduct for itself, *McFee*, ¶ 79. *See also People v. Rodriguez*, 2021 COA 38M, ¶ 12 (no reversible error occurred where the jury "listened to each portion of the recording as the officer testified to what he heard, meaning the jurors could decide for themselves whether the officer's interpretation was accurate").

¶ 42    We are not persuaded otherwise by Christian's attempt to distinguish *Vergari* on the basis that Detective Baker's testimony was not "limited to simple and brief descriptions of what he observed in the videos" but included opinions concerning Christian's "actions [and] motivations." *Vergari*, ¶ 20. True, Detective Baker's testimony included his opinion that Christian was acting aggressively, was "ready to fight," and had flicked open a knife before following Olguin. But Detective Baker made similar

21

statements during his interrogation of Christian — which were presented to the jury, albeit not for their truth — and Christian denied those claims. It is for the jury, not us, to determine the credibility of witnesses, weigh the evidence presented, and resolve any contradictions. *See People v. Butler*, 2019 CO 87, ¶ 20.

¶ 43     We are also not persuaded that the challenged opinions foreclosed Christian's self-defense theory. Christian argues that because his primary theory of defense was that he stabbed Olguin in self-defense, Detective Baker's opinion that Christian was aggressive "in effect counseled the jury that [Christian] could not claim self-defense because he was the aggressor." Critically though, Christian's argument seems to be based on the faulty premise that the jury was instructed that he could not claim self-defense to the charge of first degree murder if he was the initial aggressor.[3] *See* § 18-1-704(3)(b), C.R.S. 2025 (a person is not legally justified in using physical force in self-defense if they are the initial aggressor).

---

[3] We acknowledge that the district court's instruction concerning the lesser included offense of reckless manslaughter included language related to the initial aggressor exception to self-defense, but Christian was convicted of first degree murder, not reckless manslaughter. Accordingly, our analysis focuses on the first degree murder instruction.

¶ 44    The jury was not so instructed.  The instruction addressing Christian's claim of self-defense to first degree murder does not include any language about an initial aggressor.  Instead, it instructs that Christian was "legally authorized to use deadly physical force upon another person without first retreating if" the other elements of the affirmative defense were met, and "he did not, with intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that other person."  The latter language refers to the provocation exception to self-defense, not the initial aggressor exception.  *See* § 18-1-704(3)(a).  And the jury was not otherwise instructed as to what constitutes provocation.  As a result, the jury was not expressly instructed that Christian could not rely on self-defense if he was the initial aggressor.  Nor did the prosecutor make such an argument.  Under these circumstances, Detective Baker's relatively brief opinion testimony about Christian acting aggressively did not tell the jury to reject his defense.

¶ 45    We conclude that, although the district court abused its discretion by permitting Detective Baker to opine on matters that the jury was able to discern for itself, there is no reasonable

possibility that the error contributed to Christian's conviction for first degree murder. *See Hagos*, ¶ 12.

### D. Admission of Detective Baker's Statements in the Redacted Interrogation Video Does Not Amount to Plain Error

¶ 46 Christian contends that the district court reversibly erred by admitting certain statements Detective Baker made during Christian's video-recorded interrogation.[4] We disagree.

¶ 47 Referencing the surveillance video of the incident, Detective Baker engaged Christian as follows:

> DETECTIVE BAKER: You're ready to go.
> You're ready to fight.
>
> CHRISTIAN: I wasn't ready to fight.
>
> . . . .
>
> DETECTIVE BAKER: He's trying to get away,
> you are hitting him . . .
>
> CHRISTIAN: He wasn't trying to get away . . . .

---

[4] Although Christian attempts to frame this contention as the erroneous denial of a mistrial motion, he actually argues that the district court erred by *admitting* Baker's statements, so we address the claim of evidentiary error. To the extent Christian contends that the court erred by denying his mistrial motion, he fails to develop the argument in his opening brief, *see People v. Gregory*, 2020 COA 162, ¶ 55 (declining to address an underdeveloped argument), and we do not address arguments made for the first time in a reply brief, *People v. Woodyard*, 2023 COA 78, ¶ 15 n.3.

DETECTIVE BAKER: — [Y]ou came after him.

. . . .

DETECTIVE BAKER: But you can't go running after a guy with a knife because he grabbed your backpack.

CHRISTIAN: I didn't run after him with a knife, I grabbed it out when I felt like I needed to use it.

. . . .

DETECTIVE BAKER: You took your backpack off, ready to fight him.

CHRISTIAN: I did not take the backpack off ready to fight him, I took the backpack [off] to put it in front of me . . . because I thought he was going to shoot me.

¶ 48 Christian contends that Detective Baker's statements convey conclusions about Christian's aggression that the jury was competent to reach on its own. Christian also argues that the statements encouraged the jury to adopt the prosecution's theory of the case as established fact.

¶ 49 As an initial matter, although defense counsel moved to redact specific segments of the recorded interrogation, counsel did not object to the portions Christian now challenges on appeal before the video was admitted into evidence and played for the jury. Thus, his

contention is unpreserved, and we review for plain error. *See Hagos*, ¶ 14; *see also People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (to preserve an issue for appeal, a party must present the district court with "an adequate opportunity to make findings of fact and conclusions of law" on the issue).

¶ 50  The statements Detective Baker made in the recorded interrogation were not expressions of his opinion regarding Christian's aggression but were instead an interrogation tactic designed to elicit probative information from Christian. *See Davis v. People*, 2013 CO 57, ¶ 6 (explaining that law enforcement officials, as an interrogation tactic, often accuse an interviewee of involvement in the crime); *People v. Minjarez*, 81 P.3d 348, 357 (Colo. 2003) ("It is certainly appropriate for police to use confrontational interrogation techniques to obtain evidence of criminal conduct."); *People v. Lopez*, 129 P.3d 1061, 1066 (Colo. App. 2005) (no plain error admitting officer's statements evidencing an interrogation tactic that "utilizes accusatory statements to produce emotional and physical reactions in a defendant"). Detective Baker's statements that Christian was "ready to fight," "went after [Olguin]," and "can't go running after a guy with a knife"

reflect his efforts to confront and accuse Christian to provoke a response that would reveal information helpful to the investigation.

¶ 51 The challenged statements also provided context for the jury to better understand Christian's responses, which were denials. *See People v. Alemayehu*, 2021 COA 69, ¶¶ 89-90 (no plain error where the challenged statements were admissible as nonhearsay to provide context for the defendant's statements). Admitting Christian's statements standing alone, without Detective Baker's prompts, would have been nonsensical.

¶ 52 We conclude that the district court did not abuse its discretion by admitting Detective Baker's statements. *See Hard*, ¶ 22. Even if the court erred, however, the error was not obvious or substantial, and it does not warrant reversal. *See Hagos*, ¶ 14.

¶ 53 Any error was not "so clear-cut" that the district court should have been able to avoid it absent an objection. *Romero*, ¶ 6 (quoting *Ujaama*, ¶ 42). On the contrary, defense counsel alerted the court to other objectionable statements in the interrogation video, and the court redacted those statements before admitting the exhibit. But the statements Christian now challenges were not among those that counsel objected to at trial. Under such circumstances, we do not

expect the court to sua sponte redact additional portions of the interrogation video that neither party challenged. *See People v. Deutsch*, 2020 COA 114, ¶ 43. Christian also fails to cite any controlling authority suggesting that the admission of such evidence contravenes a statute or rule, a well-settled legal principle, or established Colorado case law. *See Campbell*, ¶ 25.

¶ 54 Additionally, admitting the statements did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the judgment of conviction. *See id.*; *Hagos*, ¶ 14. The challenged statements were four brief comments made in relatively quick succession as part of a forty-four minute video. And Christian immediately refuted the accusations. The jury viewed the surveillance footage and the entirety of the recorded interrogation. It was able to assess Christian's credibility and form its own conclusions regarding the evidence presented. *See People v. Randolph*, 2023 COA 7M, ¶ 33 ("It is the role of the jury to weigh the credibility of witnesses and to resolve conflicting testimony."), *aff'd*, 2025 CO 44.

¶ 55    On this record, we cannot conclude that the district court plainly erred, if it erred at all, by admitting the challenged statements.  *See Hagos*, ¶ 14.

IV.    Phone Records

¶ 56    Christian contends that the district court erred by admitting data retrieved from his phone that revealed his internet search history, including two searches for "switchknife store" and "switchblade knife store."  Because the searches were not dated, Christian contends that they were irrelevant under CRE 402 and inadmissible under CRE 403.  We discern no error.

A.    Additional Background

¶ 57    At trial, the prosecution moved to admit data from Christian's cell phone into evidence.  The data, which was formatted as a printed table, contained Christian's internet search history and websites that he bookmarked.  At issue here are two entries in the table showing that Christian (1) searched the terms "switchknife store" and "switchblade knife store" and (2) saved, or bookmarked, the search results for "switchblade knife store."  While other entries in the dataset included dates on which the searches were conducted, the searches at issue here were undated.

¶ 58    Defense counsel objected to the admission of the challenged data under CRE 402 and 403, arguing that because the entries were undated, the searches "would be confusing to the jury" and "unfairly prejudicial." The district court overruled the objection, reasoning that the search history was relevant because the parties disputed what type of knife Christian used during the incident — Christian claimed he used a "cub scout pen knife" but Olguin's autopsy suggested a longer object was used — and the search was probative to that end. The court further found that, because Christian told Detective Baker that he had owned the phone for just four or five months leading up to the incident, "there is sufficient evidence to show that this was not some remote search done years before but within the preceding five months."

¶ 59    During closing argument, the prosecutor presented a PowerPoint slide to the jury that included screenshots of the relevant search and bookmark history from Christian's cell phone. While displaying the slide, the prosecutor argued that the jury would see that Christian searched for the term "switchblade knife store" and bookmarked the search results. The prosecutor also

encouraged the jury to "take note of how [Christian] describe[d] the knife" in his recorded interrogation with Detective Baker.

B. The District Court Did Not Abuse Its Discretion by Admitting the Challenged Data into Evidence

¶ 60 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Evidence that is not relevant is not admissible. CRE 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury. CRE 403.

¶ 61 Evidence that Christian searched for a switchblade knife store sometime before the night he stabbed Olguin to death was unquestionably relevant. Notably, the knife Christian used was never recovered. In his interrogation, Christian claimed that he had used a small "cub scout pen knife" with a short blade. But the forensic pathologist who supervised Olguin's autopsy testified that Olguin's fatal wound penetrated three and a half inches deep — a much deeper puncture than a small pen knife could have caused. Christian's search history made it more likely that Christian

31

obtained a switchblade-type knife with a longer blade before the night of the incident and used that knife to stab Olguin, rather than a short-blade pocketknife as he claimed to use. Relatedly, the evidence made it more likely that the hand gesture reflected in the surveillance video was Christian flicking open a switchblade-type knife before pursuing Olguin across the parking lot. And, as discussed above in Part II, all those facts made it more likely that Christian killed Olguin intentionally and after deliberation.

¶ 62    Still, Christian argues that because the searches were undated, the jury was forced to "engage in speculation about [their] probative value." According to Christian, "the search[es] [were] only relevant if [they were done] recent enough to imply that [Christian] would have a switchblade in his possession on the night of the offense, or that he had obtained the knife for use on this occasion."

¶ 63    But the jury need not have speculated about when Christian conducted the searches because Christian defined the timeframe during which he made the searches by admitting to owning the cell phone for only four or five months. We disagree with Christian that the searches must have been more recent to be relevant. Remoteness in time generally impacts the weight evidence is to be

given, but not its admissibility. *Fletcher v. People*, 179 P.3d 969, 974 (Colo. 2007). And we cannot say that these searches were so remote as to obliterate their probative value.

¶ 64 Thus, we conclude that the district court did not abuse its discretion by admitting evidence that Christian searched for a switchblade knife store in the five months before he stabbed Olguin to death. *See Sims*, ¶ 44.

## V. Self-Defense Instruction

¶ 65 Christian contends that the district court erred by instructing the jury on the provocation exception to self-defense. We disagree.

### A. Applicable Law and Standard of Review

¶ 66 Under the affirmative defense of self-defense, a defendant may be legally justified in using physical force to defend himself from the use or imminent use of force by another person. § 18-1-704. But under the provocation exception, "[a] defendant is not legally justified in using physical force against another person if the defendant, with the intent to cause bodily injury or death to the other person, provokes the victim to use unlawful physical force." *Galvan v. People*, 2020 CO 82, ¶ 19; *see* § 18-1-704(3)(a).

¶ 67    To justify instructing the jury on the provocation exception to self-defense, a trial court must find "some evidence" that (1) the victim or another person used unlawful physical force against the defendant; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him to provide a pretext to injure or kill that person. *Galvan*, ¶¶ 19, 25. In this context, "some evidence" is synonymous with "some credible evidence," "any credible [even if highly improbable] evidence," "a scintilla of evidence," a "small quantum of evidence," and "any evidence." *Id.* at ¶ 24 (alteration in original).

¶ 68    We review de novo whether sufficient evidence exists to support instructing the jury on the provocation exception to self-defense. *Castillo v. People*, 2018 CO 62, ¶ 32. In doing so, we view the evidence in the light most favorable to giving the instruction. *Galvan*, ¶ 33.

B.    The District Court Did Not Err by Instructing the Jury on the Provocation Exception to Self-Defense

¶ 69    Christian contends that the record lacked sufficient evidence to justify instructing the jury on the provocation exception to

34

self-defense. He argues that, in overruling his objection to the instruction, the district court "relied on evidence that provided no indication whatsoever that [Christian] either intended to harm Olguin or to provoke him into an attack as a pretext for injuring or killing him." We are not convinced.

¶ 70 In concluding that an instruction on the provocation exception to self-defense was warranted, the district court cited evidence that Christian (1) followed Olguin and Flores to Olguin's vehicle; (2) positioned himself behind the vehicle with his camera flash or flashlight on and pointed at the car; and (3) moved his backpack from his back to his front and reached into the backpack, which prompted Olguin to reach for the backpack and initiate the "scuffle" that ended in the stabbing.

¶ 71 Viewing the evidence in the light most favorable to giving the instruction, we conclude that the record contains "some evidence" that Christian provoked Olguin into attacking him as a pretext for Christian to injure or kill Olguin. *Galvan*, ¶ 33. First, the record contained "some evidence" that Olguin used unlawful physical force against Christian. *See id.* at ¶ 19. The surveillance footage shows

that Olguin grabbed Christian's backpack out of his hands and began fighting with Christian to maintain possession of the bag.

¶ 72    Second, the surveillance footage also provides "some evidence" that Christian provoked Olguin's use of unlawful physical force.  *Id.* As the district court noted, Christian's conduct leading up to the altercation — for example, following Olguin to his car, standing behind the car with his camera flash or flashlight on, repositioning and reaching into his backpack as Olguin approached — can be rationally interpreted as conduct that goaded Olguin to attack. Christian can also be seen hiking up his pants immediately before the altercation began, conduct that could reasonably be interpreted as Christian preparing for, or encouraging, a fight.

¶ 73    Finally, the record contains "some evidence" that Christian intended his provocation to goad Olguin into attacking him to provide a pretext to injure or kill Olguin.  *Id.*  As discussed, Christian's concession that Olguin had a history of calling Christian homophobic slurs and giving him dirty looks established a motive to hurt Olguin.  And the surveillance footage shows Christian making a flicking motion with his right hand as he followed Olguin to his

36

car — a motion indicative of opening a folded knife — which suggests that Christian anticipated a fight.

¶ 74    On this record, we conclude that there was sufficient evidence to support instructing the jury on the provocation exception to self-defense.  *See id.*  We are not otherwise convinced by Christian's contention that "other evidence in the case contradicts, or at best fails to show," that Christian intended to provoke Olguin.  Essentially, Christian asks us to reweigh the evidence in his favor, but we must "[view] the evidence in the light most favorable to giving the provocation instruction."  *Id.* at ¶ 33.  The task before us is to determine whether there was some evidence to support instructing the jury on the provocation exception to self-defense, and we conclude that the record provides such evidence.

## VI.    Cumulative Error

¶ 75    Christian contends that, even if the alleged errors individually do not warrant reversal, their cumulative prejudice does.  When reviewing for cumulative error, we ask whether "numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial."  *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (citation omitted).

¶ 76    We concluded that the court erred by admitting Detective Baker's opinion testimony about the surveillance video but that the error was harmless. We also determined that the court did not err by admitting similar statements Detective Baker made during his interrogation of Christian but that, even assuming the court erred, the error was not plain. Considering the cumulative impact of these (actual and assumed) errors, we conclude that Christian was not deprived of a fair trial. *See id.*

## VII.   Disposition

¶ 77    We affirm the judgment of conviction.

JUDGE DUNN and JUDGE SCHOCK concur.